IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KIGHWAUNDA M. YARDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Jury Demand |
| | ) | |
| v. | ) | No. 3:13-cv-0622 |
| | ) | |
| HOSPITAL HOUSEKEEPING SYSTEMS, LLC, | ) ) | Judge Trauger |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Defendant has filed a motion to dismiss the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Kighwaunda M. Yardley files this response in opposition, and requests the Court deny the motion because the First Amended Complaint states a cause of action under Tennessee common law for retaliatory discharge/failure to hire based on filing a workers' compensation claim and under the Tennessee Disability Act, Tenn. Code Ann. § 8-50-103, for failure to hire based on a perceived disability.

## I. FACTS

Plaintiff's claims for retaliatory discharge and failure to hire due to a perceived disability are set forth in considerable detail in the First Amended Complaint. (Docket Entry No.14). Plaintiff began employment on May 11,1998 at University Medical Center Hospital ("UMC") in Lebanon, Tennessee, and worked there as an aide in the housekeeping department. (First Amended Complaint ¶¶ 3-4). In June 2010, plaintiff injured her right shoulder while

working at UMC, and filed a claim for workers' compensation benefits. (First Amended Complaint, ¶¶ 5-6). She was treated for her shoulder injury by approved treating physicians, Dr. Scott Baker and Dr. Damon Petty, and Dr. Petty performed surgery on her right shoulder in June 2011. (First Amended Complaint, ¶¶ 7, 9). After being off work after the surgery for a period of time, Dr. Petty returned plaintiff to light-duty work in the materials management section at UMC. (First Amended Complaint, ¶¶ 12-13).

Sometime in late 2011 or early 2012, plaintiff returned to full duty at UMC in the housekeeping department. (First Amended Complaint, ¶ 14). When she subsequently experienced right arm and hand discomfort at work, plaintiff returned to Dr. Petty for treatment. (First Amended Complaint, ¶ 15). Dr. Petty prescribed physical therapy and placed Plaintiff back on light-duty work at UMC. (First Amended Complaint, ¶ 16).

In May or June 2012, Dr. Petty performed a carpal tunnel release on plaintiff's right hand, as authorized by UMC. (First Amended Complaint, ¶¶ 17-18). As a result of this surgery, plaintiff was placed back on light-duty restrictions by Dr. Petty, and she returned to the materials management section at UMC. (First Amended Complaint, ¶¶ 19-20).
After the carpal tunnel surgery by Dr. Petty, and while Plaintiff was on light-duty work restrictions, UMC contracted with defendant Hospital Housekeeping Systems, LLC ("HHS") to perform its housekeeping services. (First Amended Complaint, ¶ 21). At a meeting between HHS management and staff at UMC, the housekeeping department employees were told they would continue to have employment at UMC after HHS took over the contract for housekeeping services at the hospital. (First Amended Complaint, ¶ 22). When the contract between UMC and

HHS was finalized, approximately forty employees at UMC were converted to employees of HHS. (First Amended Complaint, ¶¶ 23-24).

When plaintiff was released to full-duty work by Dr. Petty on August 8, 2012, she reported this to Gloria Gray in UMC's Human Resources Department and said she wanted to return to work as an employee in the housekeeping department for HHS. (First Amended Complaint,¶¶ 25-26). Ms. Gray told plaintiff that for her to return to work in the housekeeping department, that she needed to report to a representative of HHS about the medical release from Dr. Petty. (First Amended complaint, ¶ 27). Plaintiff then spoke to HHS representative "Michael," telling him she had been on light-duty due to a work accident, but had been released by Dr. Petty to return to full-duty work, and wanted to return to work at UMC in the housekeeping department. (First Amended Complaint, ¶¶ 28-29). Michael told plaintiff he had spoken with Jim Mills, Director of Human Resources at UMC, and had told Mills he "would only hire the people on FMLA, not workmans comp." (First Amended complaint, ¶ 30). Plaintiff then spoke again to Gloria Gray, who advised plaintiff to fill out an application for HHS, which plaintiff did and submitted it to Ms. Gray. (First Amended Complaint, ¶ 31).

On August 8, 2012, when plaintiff finished her shift at UMC, she spoke with Jim Mills about continued employment at the medical center. (First Amended Complaint, ¶ 32). Mills told plaintiff that HHS was not going to hire her, and that he could not force HHS to employ her in the housekeeping department. (First Amended Complaint, ¶ 33). She was also advised that day that she was terminated by UMC for "lack of work." (First Amended Complaint, ¶ 34).

## II. MOTION TO DISMISS STANDARD

A pleading is required by Rule 8(a)(2) of the Federal Rules of Civil Procedure to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 667-668 (2009). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . ." *Id*. at 678. For purposes of a 12(b)(6) motion to dismiss, the court must assume all factual allegations in the complaint are true. *Id*. A motion to dismiss must be denied if the complaint contains sufficient factual matter to "state a claim to relief that is plausible on its face." *Id*. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

A district court is not bound to accept legal conclusions as true, but as the Supreme Court stated in *Iqbal*:

> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id*. at 679.

## III. ARGUMENT

**A.  Plaintiff Has Stated a Claim for Common Law Retaliatory Discharge/Failure to Hire Based on Filing a Workers' Compensation Claim.**

Tennessee law supports a claim of retaliatory discharge/failure to hire for filing a workers' compensation claim against a prior employer. As with the case of an employee's discharge by a current employer, recognition of such a cause of action is necessary to secure the employee's rights under the Tennessee Workers' Compensation Act and the carry out the legislation's purposes.

In *Hayes v. Computer Sciences Corp.*, No. M2001-1611-COA-R3-CV, P. 1, 4-5, 2003 WL 113457 (Tenn.App., Jan. 14, 2003) (copy attached), the Tennessee Court of Appeals held that a subsequent employer could be liable for retaliation by terminating an employee, even though the claim for workers' compensation benefits occurred with a previous employer. The plaintiff Hayes was injured on May 2, 1997 while working for Brighton Painting Company, and filed a lawsuit against Brighton which was settled in November 1998. *Id.* at 1. On June 22, 1998, he was hired by the defendants as a temporary employee, but he was terminated on September 30, 1998. *Id.* Hayes supervisor was told to fire him because of his workers' compensation lawsuit against Brighton. *Id*.

The trial court in *Hayes* granted defendants' motion for summary judgment, stating that plaintiff needed to have been an employee the defendant who discharged him to establish a workers' compensation retaliatory discharge claim. *Id*. The Tennessee Court of Appeals, in a case of first impression, reversed, finding that "[a] cause of action for retaliatory discharge does exist in this situation." *Id*. at 5. This was because the reasons for the retaliatory discharge exception to the terminable-at-will doctrine created in *Clanton v. Cain-Sloan Co.,* 677 S.W.2d 441 (Tenn. 1984), also applied when a subsequent employer discharged the plaintiff as a result of a workers' compensation claim made against a prior employer. *Id.* at 4-5.

As the *Hayes* court recognized, the majority of states allow a cause of action for retaliatory discharge when the employer is a subsequent employer. *Id.* at 4. In *Darnell v. Impact Industries, Inc.,* 105 Ill.2d 158, 473 N.E.2d 935 (1984), the Illinois Supreme Court considered a retaliatory discharge action brought by an employee who was discharged by Impact Industries when it learned she had filed a workers' compensation claim against her previous employer. In recognizing the cause of action, the court stated "that the evil resulting from the

discharge of an employee for having filed a workers' compensation claim against a prior employer is as great as if the discharge had been effected by the prior employer. 105 Ill. 2d at 161. The court continued:

> We perceive no distinction between the situation where an employee is discharged for filing a workers' compensation claim against the defendant employer and one where the employer discharges the employee upon discovering that the employee had filed a claim against another employer. In either situation a retaliatory discharge is equally offensive to the public policy of this State as stated in the Workers' Compensation Act. [Citation omitted.] To hold that the tort of retaliatory discharge requires that the workers' compensation claim be made against the discharging employer would seriously undermine the comprehensive statutory scheme which provides "for efficient and expeditious remedies for injured employees."

105 Ill.2d at 161-62.

The same result was reached in *Taylor v. Cache Creek Nursing Center*, 891 P.2d 607 (Okla.App. 1994). There, the employee, who worked for Mayflower Nursing Home, filed a workers' compensation claim after suffering an injury. After the employee returned to work with certain restrictions, the subsequent employer purchased the nursing home and rehired the employee. The employee's doctor put the employee on a two week leave from work, and when she returned from the leave, she was discharged. *Id*. at 609. The Oklahoma Court of Appeals noted that an exception to the employer-at-will doctrine exists when the termination violates a clear public policy mandate that is expressed by constitutional, statutory, or decisional law, and one such exception exists when a worker exercises the right to file a workers' compensation claim. *Id*. Because exempting subsequent employers from Oklahoma's Retaliatory Discharge Act (prohibiting discrimination against employees who participated in workers' compensation proceedings) would discourage employees from exercising their rights, the court held that the Act did apply to successor employers. *Id.* at 610. See also, *Goins v. Ford Motor Co.,* 131 Mich.App. 185, 347 N.W.2d 184 (1983) (Goins stated a claim against Ford, his current

employer, for retaliatory discharge because he filed a workers' compensation claim against his former employer); *Gonzalez-Centeno v. North Central Kansas Regional Juvenile Detention Facility*, 278 Kan. 427, 101 P.3d 1170 (2004) (An employee who worked for two different employers and who made a workers' compensation claim against one employer, but was fired by the other, had a cause of action for retaliatory discharge). 1

In *Hayes*, the court also relied on what the Tennessee Supreme Court had said in *Clanton* about retaliatory discharges circumventing the "comprehensive [legislative] scheme enacted to provide a certain and expeditious remedy for injured employees." *Hayes* at 4, citing *Clanton* at 444.

> [A] cause for action for retaliatory discharge although not explicitly created by the statute, is necessary to enforce the duty of the employer, to secure the rights of the employee and to carry out the intentions of the legislature.

*Clanton* at 445. The court in *Hayes* concluded that permitting a retaliatory discharge claim against a subsequent employer fulfilled all three of these necessities. *Hayes* at 4.

It is true, as the defendant points out, that the Tennessee Supreme Court's opinion in *Anderson v. Standard Register Co.,* 857 S.W. 2d 555 (Tenn. 1993), identified four elements needed to establish a *prima facie* case for retaliatory discharge, as follows:

---

1 In contrast, the Kentucky Supreme Court held in a narrow 4-3 decision that Kentucky's retaliatory discharge statute did not extend to the situation where an employee was discharged because he filed a worker's compensation claim against a previous employer, finding that the termination was justified by the employer's reason-- that the previous compensation claim would adversely affect its workers' compensation rates. *Nelson Steel Corp. v. McDaniel*, 898 S.W.2d, 66, 68-69 (Ky. 1995).

> (1) The plaintiff was an employee of the defendant at the time of the injury;
> (2) the plaintiff made a claim against the defendant for workers' compensations benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment.

Id. at 558. But in that case there was no issue before the court about whether an employee had a claim for retaliatory discharge/failure to hire against a subsequent employer. The court in *Hayes* noted that even though the first of the two *Anderson* elements were not present there, a cause of action would still exist for retaliatory discharge by a subsequent employer.

> The employee's interest in the workers' compensation benefits is a present interest that can only be protected by making sure a worker will not be penalized for making a claim. In our opinion this right is entitled to protection, even from a threat based on prior claims.

*Hayes* at 5, fn. 3.

The unreported Tennessee Court of Appeals case relied on by the defendant, *Gager v. River Park Hospital,* 2010 WL 4244351(Tenn.App., Oct. 26, 2010), does not hold otherwise. In *Gager*, the employer was a nurse employed by an independent staffing service at River Park Hospital. After she was terminated by the staffing service, she used both the staffing service and the hospital for, *inter alia*, retaliatory discharge under Tennessee Common Law. The court held that she had no viable claim against the hospital, because she did not work there, and the hospital *never terminated her*. The situation in the *Gager* case is thus unlike the present case, where the defendant did terminate/fail to hire plaintiff because of her workers' compensation claim against her prior employer.

Plaintiff has found no cases specifically addressing the situation in this case, where a new employer took over providing housekeeping services while keeping as its employees the same persons employed by the prior employer, except for the plaintiff who had made a workers' compensation claim. Because of the contractual relationship between the two employers it could

be argued that plaintiff was in fact terminated by the defendant HHS. It advised all of the hospital's housekeeping employees that they would continue working for HHS, but when the plaintiff was released by her doctor to return to her regular housekeeping job, she was essentially terminated.

Whether this case is for wrongful discharge of the plaintiff or the defendant's wrongful failure to hire her should not matter, however, because the reason for recognizing a cause of action in either case is the same. The evil resulting from the failure to hire an employee for having filed a workers' compensation claim against the prior employer is as great as if the employee was discharged by the subsequent employer. Either way the employer is discriminating against the employee for participating in a workers' compensation proceeding. Allowing subsequent employers to discriminate against workers who had exercised their rights under the Workers' Compensation Act by refusing to hire them would discourage employees from exercising those rights. Prohibiting an employer from refusing to hire employees who have prior workers' compensation claims is necessary to secure the employee's rights and to carry out the legislature's intention.

There is another public policy reason for allowing a tort action for retaliatory failure to hire due to a prior workers' compensation claim. The legislature created the Second Injury Fund to encourage employers to hire persons who have suffered previous injuries, or who retain certain disabilities. See Tenn.CodeAnn. § 50-6-208. This was done to encourage the hiring of the disabled by relieving an employer who knowing hires a disabled person or retains an employee after discovering that the employee has a physical disability of part of the liability for workers' compensation benefits by shifting liability for payment of benefits to the Fund. See *Brown v. John Martin Construction Co.*, 642 S.W.2d. 145, 147 (Tenn. 1982) ("The purpose of

T.C.A. Sec. 50-1027[now 50-6-208], the Second Injury Fund is to encourage the hiring of the handicapped.") See also, *Arnold v. Tyson's Foods, Inc.,* 614 S.W.2d. 43, 44 (Tenn. 1981). It makes no sense to allow a fund designed to support the hiring of the disabled and injured on one hand, yet on the other hand permit a prospective employer to arbitrarily refuse to hire the employee based on that very disability. The Tennessee Legislature has declared the Workers' Compensation Act to be a remedial statute. See, Tenn.CodeAnn. § 50-6-116. The purpose of the Second Injury Fund would be frustrated if an employer was permitted to refuse to hire prospective employee on grounds they made past workers' compensation claims.

In other types of discrimination cases, courts have generally expanded the scope of the prohibited retaliation. See, e.g. *Charlton v. Paramus Bd. of Educ.,* 25 F.3d 194,200 (3rd Cir. 1993) ("The courts that have extended anti-retaliation protection have done so where the retaliation results in discharge from a later job, *a refusal to hire the plaintiff*, or other professional or occupational harm.") The United States Supreme Court has also rejected a narrow construction of the anti-retaliation statutes when it would defeat the remedial purposes of Congress. See, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (Title VII's anti-retaliation provision's "primary purpose" is "[m]aintaining unfettered access to statutory remedial mechanisms."). To effect the remedial purpose of Tennessee's Workers Compensation Act, the prohibited retaliation for filing workers' compensation claims should cover an employer's refusal to hire for making such a claim in the past.

    **B.**    **Plaintiff Has Stated a Claim For Discrimination Under the Tennessee Disability Act For Failure to Hire Her Based on a Perceived Disability.**

Plaintiff seeks to recover under the Tennessee Disability Act (TDA), formally known as the Tennessee Handicap Discrimination Act (THDA), because the Defendant "fail[ed] to hire her based on a qualified disability or in the alternative, that Defendant regarded and or precede her as disabled." (First Amended Complaint, ¶ 39). The TDA is codified at Tenn.CodeAnn. §8-50-103, and states in pertinent part: "There shall be no discrimination in the hiring, firing and other terms and conditions of employment . . . of any private employer, against any applicant for employment based solely upon any physical, mental or visual disability of the applicant . . . ." The TDA "embodies the definitions and remedies provided by the Tennessee Human Rights Act (THRA)." *Barnes v. Goodyear Tire and Rubber Co.* 48 S.W.3d 698, 705 (Tenn. 2000), abrogated on other grounds by *Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777 (Tenn. 2010). The THRA defines "disability" as follows:

    (i)   **A** physical or mental impairment that substantially limits one (1) or more of such person's major life activities;
    (ii)   **A** record of having such an impairment; or
    (iii)   Being regarded as having such an impairment.

Tenn. Code Ann. § 4-21-102(3)(A).

To state a claim for relief under the TDA, a plaintiff must allege facts, that, if proven, would establish the following elements: (1) that the employee was qualified for the position in question; (2) that the employee was disabled; and (3) that the employee suffered an adverse employment action because of that disability. *Bennett v. Nissan North Am., Inc.,* 315 S.W.3d 832, 841 (Tenn.App. 2009). The defendant contends that the plaintiff has not adequately pled the second or third elements. But the plaintiff's complaint does set forth facts establishing that the defendant regarded plaintiff as having an impairment and refused to hire her for that reason.

It is not necessary for the plaintiff to show that her physical condition actually disabled her. "While the impairment may not have substantially limited a major life activity, the plaintiff

may be regarded as disabled if the defendant treated him as if his impairment substantially limited a major life activity." *Barnes,* 48 S.W.3d at 706. One major life activity is the ability to report for work. *Id.*

In *Barnes*, the employee began working for the defendant in 1970. *Id.* at 702. In the summer of 1989, he was diagnosed with Bell's Palsy, a condition of the nervous system that affects facial muscles. *Id.* The employee was unable to work for approximately 6 weeks, but was able to return to work after that. He still had Bell's Palsy symptoms upon returning to work, in that his mouth drooped down, after talking for a minute his speaking would get slurred, and his right eye watered profusely, requiring cream and drops to be put in his eyes every two hours. *Id.* at 702-03. In September 1990, the plaintiff was laid off, and his supervisor told him the reason for his layoff was his Bell's Palsy, which had caused him to miss time from work. *Id.* at 703.

Barnes' case went to trial, and the jury found that his employer had discriminated against him by perceiving him to be disabled. The Court of Appeals reversed the jury's finding of liability, but the Tennessee Supreme Court reinstated the jury's verdict. *Id.* at 704, 710. On the issue of whether the plaintiff had proven that he was disabled, the Supreme Court found that he had shown that the employer had regarded him as being disabled:

> The record supports a finding that the basis for the layoff was an impairment. The Plaintiff proffered evidence of a statement that indicated that he was laid off "because [he] had Bell's Palsy and [he] missed [work]." This statement supports an inference that the defendant believed that the plaintiff's impairment interfered with his ability to appear for work.

*Id.* at 707.

As a result of this disability , the Court found that the Plaintiff had suffered an adverse employment action:

> Barnes testified that when he asked whether he was being laid off due to his Bell's Palsy and the impairment-related absences, Nelms responded affirmatively. This affirmation was contemporaneous with the adverse employment action, concern the employment action at issue, and was uttered by Nelms, Barnes's supervisor.
> . . . Accordingly, Barnes has presented evidence of intentional discrimination sufficient to satisfy "but for" cause or element (3).

*Id*. at 709.

What happened to Plaintiff in this action is strikingly similar to what to happened to Barnes. Plaintiff was told that she not being hired because she had been on workers' compensation. (First Amended Complaint, ¶ 30). As a result of her workers' compensation injury, she had missed time from work and had been placed on light duty for approximately six months after her shoulder surgery and another two months after her carpal tunnel surgery. (First Amended Complaint, ¶¶ 9, 12-20, 25). She was still on light duty, unable to perform her regular job as a housekeeping aide, at the time HHS took over housekeeping services, and hired about 40 of her co-workers. (First Amended Complaint, ¶¶ 21-24). Her shoulder, right arm and hand problems did not in fact disable her from working, but, like in the *Barnes'* case, her employer HHS took adverse action against her as a result (HHS knew that she could not work as an housekeeping department aide when it took over). If Barnes' discrimination case was sufficient to get to a jury, Plaintiff's case is certainly good enough to overcome defendant's motion to dismiss.

### IV. CONCLUSION

The motion to dismiss should be denied, because the First Amended Complaint states a claim upon which relief can be granted for retaliatory discharge/failure to hire based on

Yardley's prior workers' compensation claim, and for discrimination under the Tennessee Disability Act for the defendant's failure to hire plaintiff on the basis of a perceived disability.

                                      **THE LAW OFFICE OF DAVID L. COOPER, P.C.**

                            BY:   s/ David L. Cooper

                                  **DAVID L. COOPER, BPR # 11445**

                                  Third Avenue North Building
                                   208 Third Avenue, N orth
                                  Suite 300
                                  Nashville, TN 37201
                                  (615) 256-1008

                                  *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

     I certify that a true and correct copy of the **Plaintiff's Response and Memorandum in Opposition to Defendant's Motion to Dismiss the First Amended Complaint** has been delivered by the court's CM/ECF system to **Fred C. Statum, III, Esq.**, Manier & Herod, One Nashville Place, Suite 2200, 150 Fourth Ave., North, Nashville, TN 37219, on this 27th day of September, 2013.

                                        s/ David L. Cooper
                                    **DAVID L. COOPER**