# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| KIGHWAUNDA M. YARDLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:13-cv-00622 |
| v. ) | Judge Aleta A. Trauger |
| ) | |
| HOSPITAL HOUSEKEEPING SYSTEMS, ) | |
| LLC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

The plaintiff, Kighwaunda Yardley, has filed a Motion to Certify Question of Law to the Tennessee Supreme Court (Docket No. 9), to which the defendant, Hospital Housekeeping Systems, LLC ("HHS"), filed a Response in opposition (Docket No. 18). HHS has also filed a Motion to Dismiss the First Amended Complaint (Docket No. 19), to which Yardley has filed a Response in opposition (Docket No. 24).

## BACKGROUND

According to the First Amended Complaint ("FAC"), Yardley worked for the University Medical Center Hospital ("UMC") in Lebanon, Tennessee as a housekeeper from 1998 forward. During the course of her employment with UMC, Yardley suffered two on-the-job injuries, with respect to which she filed for and received workers' compensation benefits pursuant to the Tennessee Workers' Compensation Act ("TWCA"), Tenn. Code Ann. § 50-6-101 *et seq.* After the second of these injuries, Yardley worked for UMC in a "light duty" role in the materials management department – *i.e.*, a department other than the housekeeping department. At an unspecified point before August 8, 2012, UMC entered into a contract with HHS, whereby UMC

1

apparently outsourced the hospital's housekeeping function to HHS. At an unspecified point before August 8, 2012, approximately 40 UMC housekeeping department employees converted from UMC employees to HHS employees pursuant to the UMC-HHS agreement.

As of August 8, 2012, Yardley apparently remained a UMC employee, performing "light duty" work in the materials management group. On that date, Yardley's physician cleared her to return to "full time" duty, at which point Yardley asked UMC to return to the housekeeping department. UMC referred Yardley to HHS, which informed Yardley that she would not be hired because she had filed workers' compensation claims against HHS. Yardley nevertheless filed an application to work for HHS as a housekeeper, which HHS did not act upon. UMC terminated Yardley for "lack of work."

Yardley's FAC asserts two claims against HHS. First, she alleges that HHS is liable to her for "retaliatory discharge" and/or for "failure to hire" her because of her workers' compensation claim. Second, she asserts claims under the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103, and the Tennessee Human Rights Act ("THRA"), § 4-21-101 *et seq.*, on the grounds that HHS "failed to hire her based on a qualified disability" or that HHS regarded and/or perceived her as disabled.

**MOTION TO DISMISS STANDARD**

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain

statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To establish the "facial plausibility" as required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

## ANALYSIS

### I. Disability Discrimination Claim

The TDA prohibits discrimination in the hiring of any applicant for employment "based solely upon any physical, mental or visual disability of the applicant." Tenn. Code Ann. § 8-40-103; *Barnes & Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000) (abrogated on other grounds by *Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777, 781 (Tenn. 2010)). Therefore, "an individual alleging discrimination under the [TDA] must show: (1) that the individual was qualified for the position; (2) that the individual was disabled; and (3) that the

individual suffered an adverse employment action because of that disability."[1] *Barnes*, 48 S.W.3d at 705; *Bennett v. Nissan N. Am., Inc.*, 315 S.W.3d 832, 841 (Tenn. Ct. App. 2009) . Under the THRA definition of disability, which is incorporated into the TDA, a disability is (1) a physical or mental impairment that substantially limits one or more of a person's major life activities; (2) a record of having such an impairment; or (3) being "regarded as" having such an impairment. Tenn. Code Ann. § 4-21-102(3); *Bennett*, 315 S.W.3d at 842.

Here, the FAC does not allege facts consistent with any of these three definitions of disability. Although Yardley alleges that she suffered two injuries that, at least for a time, limited her to "light duty" work at UMC, she has not alleged that she was limited (substantially or otherwise) in the major life activity of working or in any other major life activity. *See Bennett*, 315 S.W.3d at 843 ("Merely having an impairment does not make one disabled") (quoting *Toyota Motor Mfg., Ky, Inc. v. Williams*, 534 U.S. 184, 195 (2002)). Nor does the FAC contain any non-conclusory allegations indicating (or even suggesting) that HHS "regarded" Yardley as substantially limited in a major life activity. *See Barnes*, 48 S.W.3d at 706 (stating that a plaintiff "may be regarded as disabled if the defendant treated him as if his impairment substantially limited a major life activity.")

Indeed, the gravamen of Yardley's FAC is that HHS discharged or refused to hire her

---

[1] The THRA does not cover employment discrimination based on a disability. However, "[t]he TDA embodies the definitions and remedies provided by the [THRA]." *Barnes*, 48 S.W.3d at 705; *Perlberg v. Brencor Asset Mgmt.*, 63 S.W.3d 390, 394 (Tenn. Ct. App. 2001) (stating that the TDA "works in conjunction with the THRA to grant an individual a civil cause of action for wrongful discrimination based upon a [disability].") Therefore, courts routinely construe Tennessee disability discrimination claims as arising under the TDA, not the THRA. *See, e.g*, *Durham v. City of Clarksville, Tenn.*, No. 3:11-cv-00986, 2012 WL 6021435, at *6 (M.D. Tenn. Dec. 4, 2012); *Whited v. Cmty. Bank of the Cumberlands, Inc.*, No. 2-08-0061, 2010 WL 605280, at * (M.D. Tenn. Feb. 18, 2010). The court will do the same here. Also, Tennessee courts "look to federal law for guidance in enforcing" the TDA. *Barnes*, 48 S.W.3d at 705.

because she had filed a workers' compensation claim against UMC. She has not asserted any non-conclusory allegations suggesting that HHS discharged or refused to hire her for any other reason. In the absence of such allegations, dismissal of the disability discrimination claim is warranted on the grounds that she has not alleged the causation element of that claim – *i.e.*, that HHS discharged or refused to hire her "because of" a perceived disability. *See Stokes v. Hamilton Cnty. Tenn.*, 113 F. App'x 680, 684 (6th Cir. 2004); *Hall v. Wal-Mart Stores E.,* LP, 637 F. Supp. 2d 588 (M.D. Tenn. 2009); *see also Mahon v. Crowell*, 295 F.3d 585, 592-93 (6th Cir. 2002).

## II.     Workers' Compensation Claim

### A.     Standard for Retaliatory Discharge

Tennessee recognizes the doctrine of employment at will, under which either party to an employment relationship may terminate their employment with or without cause. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn. 1992). The TWCA does not explicitly recognize a retaliatory discharge claim. However, the TWCA contains a provision stating that "[n]o contract or agreement, . . . or rule, regulation, or other device, shall in any manner operate to relieve any employer, in whole or in part, of obligations created by this chapter . . . ." Tenn. Code Ann. § 50-6-114.

In *Clanton v. Cain-Sloan*, 677 S.W.2d 441 (Tenn. 1984), the Tennessee Supreme Court found that, when an employer discharges an at-will employee in retaliation for filing a workers' compensation claim, the retaliatory discharge constitutes an illegal "device" forbidden by § 50-6-114, thereby creating an exception to the employment at will doctrine. The court reasoned that "a cause of action for retaliatory discharge[,] although not explicitly created by the statute, is

necessary to enforce the duty of the employer, to secure the rights of the employee and to carry out the intention of the legislature." *Id.* at 445.[2]

In *Anderson v. Std. Register Co.*, 857 S.W.3d 555 (Tenn. 1993), the Tennessee Supreme Court identified four elements of a *prima facie* case for a workers' compensation retaliatory discharge claim (which the court in *Clanton* had not done). The *Anderson* court held that a workers' compensation retaliatory discharge claim applied to at-will employees under the following circumstances: (1) the plaintiff was an employee of the employer at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment. Tennessee has subsequently expanded this doctrine to include retaliatory discharges in violation of public policy, where a motivating factor in the employee's discharge violates a "clear public policy 'evidenced by an unambiguous constitutional, statutory or regulatory provision.'" *See Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 535 (Tenn. 2002) (quoting *Chism v. Mid-S. Milling Co.*, 762 S.W.2d 552, 555 (Tenn. 1988)); *see also* Tenn. Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304 (creating a statutory cause of action protecting employees from retaliation for "refusing to participate in, or for refusing to remain silent about, illegal activities").

Tennessee courts have emphasized that the workers' compensation retaliatory discharge

---

[2]*Clanton* purported to interpret the language of the TWCA – § 50-6-114 – as implicitly recognizing a retaliatory discharge cause of action. Although *Clanton* appeared to engage in statutory construction of the TWCA, the Tennessee Supreme Court has subsequently characterized *Clanton* as having created a "common law" exception" to the employment at will doctrine. *See Hodges*, 833 S.W.2d at 899; *Kinsler v. Berkline, LLC*, 320 S.W.3d 796 (Tenn. 2010); *see also Thayer v. Tyson Foods, Inc.*, 355 F. App'x 886, 889 (6th Cir. 2009).

claim provides only a narrow exception to the employment-at-will doctrine. For example, Tennessee courts have found that the exception only applies to employees-at-will, not to employees subject to an employment contract. *See, e.g.*, *Gossett v. Tractor Supply Co., Inc.*, 320 S.W3d 777 (Tenn. 2010); *Petschonek v. Catholic Diocese of Memphis*, No. W2011-02216-COA-R9-CV, 2012 WL 1868212, at *9 (Tenn. Ct. App. May 23, 2012) (employee subject to employment contract could not make out *prima facie* case of retaliatory discharge); *Quinn-Glover v. Reg'l Med. Ctr. at Memphis*, No. W2011-00100-COA-R3-CV, 2012 WL 120209, at *10 (Tenn. Ct. App. Jan. 17, 2012) (where plaintiff alleging TPPA retaliation stated that she was an "employee" rather than an "employee-at-will," claim was subject to dismissal).

Here, Yardley appears to assert either of two legal theories: (1) that HHS functionally was her employer and discharged her in retaliation for filing a workers' compensation claim against HHS; or (2) HHS was a prospective employer that failed to hire her because she had filed a workers' compensation claim against HHS. Having examined the case law cited by the parties, it is clear that the Tennessee Supreme Court has never recognized either theory of liability.

### B.  Retaliatory Discharge by a Subsequent Employer

Although the Tennessee Supreme Court has not addressed the issue, an unpublished Tennessee Court of Appeals decision has recognized that a new employer can be liable for discharging an employee for filing a workers' compensation against a previous employer. *See Hayes v. Computer Sciences Corp.*, No. M200101611-COA-R3-CV, 2003 WL 113457 (Tenn. Ct. App. Jan. 14, 2003).

In *Hayes*, the plaintiff was terminated by the defendant employer ("ACS") after ACS learned, 90 days after hiring the plaintiff, that the plaintiff had filed a workers' compensation

7

claim against his *previous* employer. 2003 WL 113457, at *1. The *Hayes* court acknowledged that the plaintiff's claims did not meet two of the four *Anderson* factors, because the plaintiff was not an employee of ACS at the time of the underlying injury and had not made a claim against ACS for workers' compensation benefits. *Id.* at *5. Nevertheless, the court found that the plaintiff could maintain a cause of action for retaliatory discharge against ACS. The court determined that other jurisdictions had recognized that proceedings against a subsequent employer were warranted in analogous circumstances. *Id.* at *2-*4. With respect to Tennessee precedent, the court believed that affording the plaintiff a cause of action would further the principles stated by the Tennessee Supreme Court in *Clanton*, finding "that such a claim is (1) necessary to enforce the duty of the employer; (2) to secure the rights of the employee; and (3) to carry out the intention of the legislature." *Hayes*, 2003 WL 113457, at *4 (citing *Clanton*, 667 S.W.2d at 445).³ The court also distinguished the line of cases relating to retaliatory discharges for reporting illegal activity, on the grounds that "the policy reasons supporting a cause of action for retaliatory discharge" are different in the workers' compensation context. *Id.* *5 n.3. The court reasoned as follows:

> As the court stated in *Clanton* [], a cause of action for retaliatory discharge is necessary to preserve the *personal* rights of workers in workers' compensation benefits. A cause of action for being fired for refusing to remain silent about illegal activities is to protect the *public* interest. *Mason v. Septon*, 942 S.W.2d 470 (Tenn. 1997). The employee's interest in the workers' compensation benefits is a present interest that can only be protected by making sure a worker will not be penalized for making a claim. In our opinion this is a right entitled to protection, even from a threat based on prior claims.

---

³The court also examined *Clanton* and its animating principles. The court observed that *Clanton* had emphasized that Tenn. Code Ann. § 50-6-114 – the TWCA provision under which the *Clanton* court had characterized a retaliatory discharge as an illegal "device" designed to frustrate the rights otherwise conferred by the TWCA – was entitled to a "liberal and equitable construction" so as to realize the intention of the Tennessee legislature. *Id.* at *4.

8

*Hayes*, 2013 WL 113457, at *5 n.3 (emphases in original).

In addition to extending the TWCA public policy exception, *Hayes* also suggests that the *Anderson* factors should not be mechanically applied, at least not without consideration of the policy grounds animating the *Anderson/Clanton* exception.

C. **Retaliatory Failure to Hire**

This court has not located any case in which a Tennessee court has addressed whether Tennessee recognizes or would recognize a retaliatory or discriminatory *failure to hire* claim in any context, whether related to workers' compensation claims or otherwise. However, Yardley argues that this court should extend *Clanton* and *Anderson* to recognize a claim for "retaliatory failure to hire," whereby HHS would be liable to Yardley for failing to hire her because she previously filed a workers' compensation claim. The defendants argue that Yardley cannot rely on the *Clanton/Anderson* exception because she cannot meet at least two elements of the *Anderson* test: (1) she was never employed by HHS and (2) at the time she was injured and filed workers' compensation claims, she was an employee of UMC.

This court, sitting in diversity, is not in a position to declare that Tennessee recognizes a claim for wrongful failure to hire premised on a previous workers' compensation claim. That decision would be tantamount to a "fundamental policy innovation" that is properly reserved for the Tennessee courts to articulate. *See Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 610 (6th Cir. 2012) (absent direction from Michigan Supreme Court, refusing to recognize failure to rehire theory of liability under Michigan law) (quoting *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004)). However, the court recognizes that resolution of this issue could have substantial policy implications for the efficacy of the TWCA. If employers are permitted to

9

refuse to hire an employee specifically because he or she filed a workers' compensation claim, it would essentially permit future potential employers to discriminate against that individual for having exercised his or her rights under the TWCA. This could chill an existing employee's incentive to file a workers' compensation claim for fear of being blackballed by future prospective employers. In that respect, discriminating or retaliating against employment applicants for exercising TWCA rights might constitute a "device" forbidden by Tenn. Code Ann. § 50-6-114.

This principle seems to have animated the *Hayes* decision in the context of a retaliatory discharge by a subsequent employer. However, the *Hayes* court did not address a "failure to hire" claim, because the retaliatory employer at issue happened to have hired the employee 90 days earlier. If the analysis in *Hayes* was sound, it is not clear to this court why refusing to hire an employee because she filed a claim under the TWCA against a previous employer would have any less of a chilling effect on that individual's exercise of TWCA rights than discharging that individual for the same reason ninety days (or even one minute) after hiring her.[4]

**D.     Application**

The FAC contains some factual ambiguities that make certification unwarranted at this stage. Understandably, Yardley has not alleged the precise nature of the contractual relationship between UMC and HHC during the relevant time frame, information that the court would not expect her to know in the first place. Among areas of necessary inquiry, clarification of the

---

[4]Of course, there may be countervailing policy considerations that militate against extending the *Clanton/Anderson* exception beyond the retaliatory discharge context. The claim was originally conceived as a narrow exception to the employment-at-will doctrine relative to an employee's current employer. Thus, it may be that the doctrine was meant to remain strictly limited to circumstances satisfying the four *prima facie* factors articulated in *Anderson*.

relationships among UMC, HHC, and Yardley during the relevant time frame are essential to frame the issues for the court.  When the factual record in this case is clearer, the court will be in a better position to determine what specific issue, if any, the court should certify to the Tennessee Supreme Court.

Accordingly, the court will dismiss Yardley's disability discrimination claim with prejudice, the court will allow the workers' compensation retaliatory discharge/failure to hire claim to proceed, and the court will deny the Motion to Certify without prejudice to refiling at a later stage in these proceedings, based on a developed factual record.

## CONCLUSION

HHS's Motion to Dismiss will be granted in part and denied in part, Yardley's disability discrimination claims under the TDA and THRA will be dismissed with prejudice, and Yardley's workers' compensation retaliatory discharge/failure to hire claim will proceed.  Yardley's Motion to Certify will be denied without prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge